**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CUSHMAN & WAKEFIELD, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:14-cv-08725 |
| | ) | |
| ILLINOIS NATIONAL INSURANCE | ) | The Honorable Judge |
| COMPANY, ACE AMERICAN | ) | Joan H. Lefkow |
| INSURANCE COMPANY, LIBERTY | ) | |
| MUTUAL INSURANCE COMPANY, and | ) | |
| RLI INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFF'S OPPOSITION TO DEFENDANT ACE AMERICAN INSURANCE
COMPANY'S MOTION TO DISMISS**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ...................................................................................................1

ARGUMENT..................................................................................................................................3

I.     ACE FAILS TO MEET THE RIGOROUS STANDARD APPLICABLE TO ITS
MOTION TO DISMISS ...................................................................................................3

II.    C&W'S THIRD CAUSE OF ACTION STATES A VALID CLAIM FOR
DECLARATORY RELIEF ...............................................................................................4

III.   C&W'S NINTH CAUSE OF ACTION SUFFICIENTLY PLEADS THAT ACE
BREACHED ITS POLICY OBLIGATIONS BY FAILING TO PROVIDE A
TIMELY COVERAGE POSITION ...................................................................................9

IV.   THE TWELFTH CAUSE OF ACTION PROPERLY PLEADS A CAUSE OF
ACTION FOR TORTIOUS BAD FAITH.......................................................................12

V.    ACE IS NOT ENTITLED TO DISMISS C&W'S PUNITIVE DAMAGES
CLAIM.............................................................................................................................14

CONCLUSION.............................................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*ABN AMRO Bank, N.V. v. MBIA Inc.*,
    17 N.Y.3d 208 (2011)...................................................................................9

*Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*,
    651 F. Supp. 2d 155 (S.D.N.Y. 2009) ..................................................10

*Acquista v. N.Y. Life Ins. Co.*,
    730 N.Y.S.2d 272 (App. Div. 2001) .....................................................11

*Aetna Life Ins. Co. v. Haworth*,
    300 U.S. 227 (1937) ...............................................................................5

*Ali v. Fed. Ins. Co.*,
    719 F.3d 83 (2d Cir. 2013) .....................................................................8

*Allstate Ins. Co. v. Winnebago Cnty. Fair Ass'n, Inc.*,
    475 N.E.2d 230, 131 Ill. App. 3d 225 (2d Dist.1985)............................9

*American Home Assurance Co. v. Swanson*,
    No. 93 C 383, 1993 WL 155501 (N.D. Ill. May 10, 1993) ....................7

*American Int'l Group, Inc. v. ACE INA Holdings, Inc.*,
    722 F. Supp. 2d 948 (N.D. Ill. 2010), *vacated in part on
    reconsideration on other grounds*, No. 07C2898,
    2010 WL 3730980 (N.D. Ill. Sept. 16, 2010) ......................................15

*Amusement Indus., Inc. v. Stern*,
    693 F. Supp. 2d 301 (S.D.N.Y. 2010) ...................................................6

*Appert v. Morgan Stanley Dean Witter, Inc.*,
    673 F.3d 609 (7th Cir. 2012) ..................................................................3

*Bankers Trust Co. v. Old Republic Ins. Co.*,
    959 F.2d 677 (7th Cir. 1992) ..................................................................7

*Bi-Economy Market, Inc. v. Harleysville Ins. Co. of N.Y.*,
    10 N.Y.3d 187 (2008).....................................................................11, 12

*Bowen v. Patrick*,
    No. 11 Civ. 4799, 2012 WL 3743409 (S.D.N.Y. Aug. 29, 2012) ........10

*Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*,
    10 N.E.3d 902, 2014 IL 116389 (2014) .................................................9

*Brooks v. Zurich-Am. Ins. Grp.*,
753 N.Y.S.2d 454 (App. Div. 2002) .......................................................................... 9

*Brundridge v. Glendale Fed. Bank, F.S.B.*,
659 N.E.2d 909, 168 Ill. 2d 235 (1995) .................................................................... 12

*Channel Master Corp. v. Aluminum Ltd. Sales*,
4 N.Y.2d 403 (1958) ............................................................................................ 13, 14

*Chernish v. Mass. Mut. Life Ins. Co.*,
No. 5:08-CV-0957, 2009 WL 385418 (N.D.N.Y. Feb. 10, 2009) ........................... 12

*Classic Bus. Corp. v. Equilon Enters., LLC*,
No. 09 C 7735, 2011 WL 290431 (N.D. Ill. Jan. 27, 2011) ...................................... 4

*Computer Strategy Coordinators, Inc. v. Philadelphia Indem. Ins. Co.*,
No. 02 C 8913, 2003 WL 21317294 (N.D. Ill. June 6, 2003) ................................... 9

*Crichton v. Golden Rule Ins. Co.*,
576 F.3d 392 (7th Cir. 2009) ...................................................................................... 9

*Dalton v. Educ. Testing Serv.*,
87 N.Y.2d 384 (1995) ................................................................................................ 10

*Donnelly v. Washington Nat. Ins. Co.*,
482 N.E.2d 424, 136 Ill. App. 3d 78 (1st Dist. 1985) ............................................. 11

*Duggins v. Hunt*,
323 F.2d 746 (10th Cir. 1963) .................................................................................... 6

*E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*,
241 F.3d 154 (2d Cir. 2001) ............................................................................... 4, 5, 7

*Egan Marine Corp. v. Great American Ins. Co. of N.Y.*,
665 F.3d 800 (7th Cir. 2011) .................................................................................... 13

*Eli Lilly & Co. v. Arch Ins. Co.*,
No. 1:13-cv-01770-LJM, 2014 WL 1049068 (S.D. Ind. Mar. 18, 2014) .................. 8

*Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*,
837 F. Supp. 2d 162 (S.D.N.Y. 2011) ....................................................................... 10

*Employers Ins. of Wausau v. Ehlco Liquidating Trust*,
708 N.E.2d 1122, 186 Ill. 2d 127 (1999) ................................................................. 13

*Feingold v. Liberty Mut. Grp.*,
847 F. Supp. 2d 772 (E.D. Pa. 2012) ........................................................................ 15

*Forest Labs., Inc. v. Arch Ins. Co.*,
   984 N.Y.S.2d 361 (App. Div. 2014) .................................................................8

*Foster v. DeLuca*,
   545 F.3d 582 (7th Cir. 2008) .........................................................................8

*Freed v. Travelers*,
   300 F.2d 395 (7th Cir. 1962) .......................................................................11

*Geisha v. Tuccillo*,
   525 F. Supp. 2d 1002 (N.D. Ill. 2007)...........................................................5

*Gibson v. City of Chicago*,
   910 F.2d 1510 (7th Cir. 1990) .......................................................................3

*Great Lakes Dredge & Dock Co. v. City of Chicago*,
   260 F.3d 789 (7th Cir. 2001) .........................................................................5

*Grinnell Mut. Reinsurance Co. v. Reinke*,
   43 F.3d 1152 (7th Cir. 1995) .........................................................................8

*Hickman v. Wells Fargo Bank N.A.*,
   683 F. Supp. 2d 779 (N.D. Ill. 2010).............................................................7

*Hinrichs v. Whitburn*,
   975 F.2d 1329 (7th Cir. 1992) .......................................................................5

*Lear Corp. v. Johnson Electric Holdings Ltd.*,
    353 F.3d 580 (7th Cir. 2003) ........................................................................8

*Markel Am. Ins. Co. v. Dolan*,
   787 F. Supp. 2d 776 (N.D. Ill. 2011)...........................................................13

*Marshall v. Hyundai Motor Am.*,
   No. 12-CV-3072, 2014 WL 5011049 (S.D.N.Y. Sept. 30, 2014)..........................................9

*Med. Assurance Co. Inc. v. Hellman*,
   610 F.3d 371 (7th Cir. 2010) .........................................................................5

*N.Y. Univ. v. Continental Ins. Co.*,
   87 N.Y.2d 308 (1995)...........................................................................12, 14

*Nationwide Ins. Co. v. Zavalis*,
   52 F.3d 689 (7th Cir. 1995) ...........................................................................8

*Nautilus Ins. Co. v. Vuk Builders, Inc.*,
   406 F. Supp. 2d 899 (N.D. Ill. 2005)..............................................................8

*North Shore Bottling Co. v Schmidt & Sons*,
  22 N.Y.2d 171 (1968) ..................................................................................................14

*Peter Lampack Agency, Inc. v. Grimes*,
  958 N.Y.S.2d 310 (Sup. Ct. 2010) .............................................................................13

*Richard Avedon Found. v. AXA Art Ins. Corp.*,
  No. 151435/2014, slip op. (N.Y. Sup. Ct. Feb. 4, 2015) ...........................................9

*Sikarevich Family L.P. v. Nationwide Mut. Ins. Co.*,
  No. 13-cv-05564, 2014 WL 3127729 (E.D.N.Y. July 3, 2014) ...............................13

*Silva v. F.R. Real Estate Devel. Corp.*,
  870 N.Y.S.2d 328 (App. Div. 2009) ...........................................................................12

*Siwek v. White*,
  905 N.E.2d 278, 388 Ill. App. 3d 152 (1st Dist. 2009) ..............................................14

*Sukup v. State*,
  19 N.Y.2d 519 (1967) ................................................................................................11

*Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*,
  819 F.2d 746 (7th Cir. 1987) .......................................................................................6

*Tocci Bldg. Corp. of N.J., Inc. v. Va. Sur. Co.*,
  750 F. Supp. 2d 316 (D. Mass. 2010) ..........................................................................5

*Travelers Ins. Co. v. Penda Corp.*,
  974 F.2d 823 (7th Cir. 1992) .......................................................................................8

*United States v. Broadway Constr., Inc.*,
  No. 97 C 8284, 1998 WL 246385 (N.D. Ill. Apr. 24, 1998) .....................................12

*Washington v. Kellwood Co.*,
  No. 05 Civ. 10034, 2009 WL 855652 (S.D.N.Y. Mar. 24, 2009) ............................13

**Statutes**

215 ILCS 5/155 ...................................................................................................... 11, 13

Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202 (2010) ............................. 2, 4, 6

**Other Authorities**

Fed. R. Civ. P. 8 ........................................................................................................3

Fed. R. Civ. P. 12 ......................................................................................................3

Fed. R. Civ. P. 15 ......................................................................................................8

Plaintiff Cushman & Wakefield, Inc. ("C&W") submits this opposition to the motion of defendant ACE American Insurance Company ("ACE") to dismiss the Third, Ninth, and Twelfth Causes of Action, and certain prayers for relief, in C&W's Complaint in this action.[1]

## PRELIMINARY STATEMENT

C&W finds itself caught in the middle between insurers who accepted C&W's premiums, but now argue that the other insurer should pay for C&W's ongoing covered losses, which already include tens of millions of dollars in defense costs. This action is designed to end that shell game, by seeking a declaration of rights and liabilities under each of the policies potentially implicated by the underlying claims, and holding those insurers who have breached their policy obligations liable for damages C&W has suffered as a result of those breaches. The allegations of the Complaint in general, and of the Third, Ninth, and Twelfth Causes of Action against ACE in particular, fully support C&W's right to seek that relief, and ACE's motion must be denied.

First, ACE's contention that the Third Cause of Action for a declaration of rights under the 2009-10 ACE excess policy must be dismissed because the Complaint does not affirmatively allege exhaustion of the underlying policy sold by Illinois National Insurance Company ("Illinois National") misconstrues the allegations of the Complaint and the law. As set forth in the Complaint, Illinois National contends that all of the underlying claims trigger only the 2009-10 policy year. C&W need not agree with that contention in order to recognize that, if true, the Illinois National policy has been exhausted and the ACE excess policy triggered.[2] Courts have consistently held that a policyholder caught between multiple insurance companies' conflicting

---

[1] As ACE did not move to dismiss the Tenth Cause of Action, ACE will remain a defendant here regardless of the outcome of this motion, belying its assertion that the causes of action it challenges are "Trojan Horses" designed to "drag ACE into a litigation in which it has no place." (Motion at 1.)

[2] As Illinois National contends in its counterclaim filed in this action, it already has paid more than $27 million responding to the underlying claims and thus has exceeded the $23 million limit of its 2009-10 policy by more than $4 million. (ECF No. 84, ¶¶ 3, 35.) ACE does not, and cannot, dispute that fact.

allocation theories may properly seek a declaratory judgment to resolve those issues. Moreover, ACE's additional reservation of the right to raise numerous additional defenses to coverage makes it even more important that ACE be a party to this action. C&W should not be faced with the need to re-litigate these issues with ACE, which would raise the possibility of inconsistent rulings – a result the Declaratory Judgment Act is intended to avoid. Finally, courts uniformly recognize a policyholder's right to seek a declaratory judgment with respect to coverage under excess policies that have not yet been triggered where there is a reasonable likelihood that they will be. Although here, if the Court adopts Illinois National's single-year allocation theory, the underlying insurer has already paid its limits and ACE's excess policy is already triggered.

ACE's attack on C&W's Ninth Cause of Action for breach of contract fares no better. Courts hold that an insurer's failure to provide timely coverage determinations can constitute a breach of its contractual obligations under an insurance policy. Moreover, contrary to ACE's contentions, both Illinois and New York law permit a policyholder who is the victim of its insurer's breach of the covenant of good faith and fair dealing to seek to recover the consequential damages, including attorney's fees, resulting from the insurer's breach.

Finally, ACE's wrongs as alleged in C&W's Twelfth Cause of Action for insurer bad faith are not mere duplicates of its failure to provide a timely coverage determination alleged in the Ninth Cause of Action. To the contrary, C&W alleges that ACE engaged in a tortious campaign of multiple tactics and misrepresentations designed to avoid its duties to C&W extending well beyond its breach of contract, including deliberately failing to fulfill its express promises to provide C&W with a written coverage position it knew Illinois National had requested, and inducing C&W to enter into a separate standstill agreement as a tool to mask ACE's intent of further delaying its coverage obligations and interfering with C&W's insurance

2

rights.  Under either New York or Illinois law, those allegations support a claim that ACE engaged in conduct outside its contractual obligations in order to defeat C&W's ability to obtain the benefits of its insurance contracts – the essence of insurer bad faith.

In short, there is nothing lacking, much less improper, in the claims C&W asserts against ACE.  Rather, they stem from the type of conduct and disputes that frequently arise in connection with multi-insurer claims, and which are just as frequently resolved via claims for declaratory judgment, breach of contract and insurer bad faith.  For that reason, ACE's motion to dismiss the Third, Ninth, and Twelfth Causes of Action should be denied in all respects.

## ARGUMENT

## I.    ACE FAILS TO MEET THE RIGOROUS STANDARD APPLICABLE TO ITS MOTION TO DISMISS

Federal Rule of Civil Procedure 8 requires only "notice" pleading.  *See Appert v. Morgan Stanley Dean Witter, Inc*., 673 F.3d 609, 622 (7th Cir. 2012).  To satisfy this standard, in its Complaint, C&W was required only to "provide a 'short and plain statement of the claim showing that the pleader is entitled to relief,' which is sufficient to provide the defendant with 'fair notice' of the claim and its basis."  *Id.*  Given that notice standard, a defendant seeking to dismiss a complaint under Rule 12(b)(1) or 12(b)(6) of the Federal Rules of Civil Procedure faces a heavy burden.  On such a motion, all well-pleaded facts and all reasonable inferences that can be drawn in favor of a non-moving party from those facts are assumed to be true.  Moreover, "the purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide the merits."  *Gibson v. City of Chicago*, 910 F.2d 1510, 1520-21 (7th Cir. 1990).

Under these standards C&W's Third, Ninth, and Twelfth Causes of Action state proper claims for declaratory judgment, breach of contract, and insurer bad faith, and for the recovery of

the damages sought by C&W, under both Illinois and New York law.  Accordingly, ACE's

motion to dismiss should be denied in all respects.

## II.    C&W'S THIRD CAUSE OF ACTION STATES A VALID CLAIM FOR DECLARATORY RELIEF

Contrary to ACE's arguments, the Third Cause of Action in the Complaint not only

satisfies the standards for a properly pleaded claim under the Declaratory Judgment Act, it raises

issues routinely decided by federal courts via such claims.[3]  As the Complaint alleges (ECF No.

1, ¶¶ 10(a), 51) and ACE itself admits (Motion at 3), Illinois National has asserted that the

underlying claims all trigger only the 2009-10 policy year and must all be allocated to that year.

As the Complaint further alleges, if Illinois National prevails on those arguments, the ACE 2009-

10 excess policy, which sits directly above the Illinois National policy, is liable for all amounts

incurred in connection with the underlying claims in excess of the Illinois National policy limits.

(ECF No. 1, ¶¶ 28, 89; *see also* ECF No. 84, ¶¶ 3, 35 (Illinois National's Counterclaim, asserting

that the limits of the 2009-10 Illinois National policy have been exhausted).)

In short, C&W finds itself in the position of having two of its insurance companies

pointing at each other and saying "your turn."  Courts have routinely recognized that such

conflicting contentions are properly resolved by means of a declaratory judgment action

involving both insurers.  For example, in *E.R. Squibb & Sons, Inc. v. Lloyd's & Companies*, 241

F.3d 154, 176-79 (2d Cir. 2001), a policyholder sought a declaratory judgment against excess

insurers whose policies could be triggered depending, in part, on allocation of the multiple

underlying claims among triggered policy years.  The court recognized that "[i]t is very

conceivable that [the resolution of the allocation issue] could end up placing in a single policy

year a substantial number of claims that might very well reach the levels of each of the carriers in

---

[3] Federal law applies to the Third Cause of Action under the federal Declaratory Judgment Act.  *Classic Bus. Corp. v. Equilon Enters., LLC*, No. 09 C 7735, 2011 WL 290431, at *5 (N.D. Ill. Jan. 27, 2011).

this litigation . . . ." *Id.* at 176-77 (quoting lower court). It affirmed the holding that an actual case or controversy was presented, ripe for adjudication via declaratory judgment. *Id.*[4]

Similarly here, the resolution of the allocation issue could "end up placing" the underlying claims "in a single policy year" – and if it does, the ongoing costs in connection with the underlying claims not only "might very well reach" the immediately excess ACE policy, they have already reached it. Noticeably absent from ACE's motion is any contention that Illinois National has paid less than the $23 million limit of the 2009-10 Illinois National policy in connection with the underlying claims. ACE does not make such a contention because it knows that Illinois National believes that it has paid millions more than its policy limits. (ECF No. 84, ¶¶ 3, 35.) Accordingly, in contrast to the inapplicable cases on which ACE relies, this dispute, and C&W's coverage claims against ACE, is neither "hypothetical, speculative [nor] illusory."[5]

---

[4] *See also Great Lakes Dredge & Dock Co. v. City of Chicago*, 260 F.3d 789 (7th Cir. 2001) (declaratory judgment action to allocate claim between two groups of potentially applicable policies); *Tocci Bldg. Corp. of N.J., Inc. v. Va. Sur. Co.*, 750 F. Supp. 2d 316, 322-23 (D. Mass. 2010) (rejecting excess insurer assertion that claim was not ripe until exhaustion of primary policy; fact that excess carrier "contests the substantive merits of the primary carrier's coverage" showed the existence of an actual controversy).

[5] *Hinrichs v. Whitburn*, 975 F.2d 1329, 1333 (7th Cir. 1992) (cited in Motion at 5). In *Hinrichs*, a woman who claimed that she was compelled by her religious beliefs to homeschool her children refused to participate in a state job training and search program and lost aid benefits as a result. *Id.* at 1330. The court held that because she had not allowed the state an opportunity to accommodate what she perceived to be her religious duties within the context of the job program, the "conflict" she posited between the exercise of her religious beliefs and participation in the program was too hypothetical or speculative to support a claim for declaratory judgment. *Id.* at 1334; *see also Geisha v. Tuccillo*, 525 F. Supp. 2d 1002, 1015 (N.D. Ill. 2007) (cited in Motion at 5) (no case or controversy regarding trademark infringement action where allegedly infringing restaurant had not yet used mark, and actual preparations for opening restaurant did not advance significantly beyond statement of intent). Here, in contrast, the Complaint alleges that Illinois National already has failed to make payments due under its policy based in part on the allocation issue (ECF No. 1, ¶ 111); accordingly, resolution of the Illinois National allocation argument will necessarily affect the determination of whether the ACE policy is currently triggered, and, if it is, require resolution of the other defenses to coverage raised by ACE. Even cases cited by ACE support the finding that such an existing dispute states a valid claim for declaratory judgment. *See Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 242 (1937) (cited in Motion at 5) (finding case ripe for adjudication where dispute is definite and concrete); *Med. Assurance Co. Inc. v. Hellman*, 610 F.3d 371, 377, 381-82 (7th Cir. 2010) (cited in Motion at 5) (case ripe for adjudication where concrete, actual failure to cooperate by policyholder potentially relieved insurance company of its current obligations under policy).

Contrary to ACE's suggestion (Motion at 8), that conclusion is not affected in any way by the fact that C&W and ACE both disagree with Illinois National's proposed allocation. *See, e.g.*, *Amusement Indus., Inc. v. Stern*, 693 F. Supp. 2d 301, 308 (S.D.N.Y. 2010) (plaintiff's assertion that there was "no relationship" between him and third party "does not, therefore, bar him from asserting that, should such a relationship be found, [the third party] is obligated to indemnify him," but dismissing declaratory relief claim on other grounds). In fact, Federal Rule 8(d)(2) contemplates not only that a pleading may assert alternative claims, but that "the pleading is sufficient if any one of them is sufficient." C&W's alternative assertion that it is entitled to a declaration of coverage under the 2009-10 ACE excess policy if Illinois National succeeds on its allocation argument in this action falls squarely within the scope of that provision.

Indeed, ACE's assertion that the underlying claims trigger different policy periods makes it even more important that ACE be a party to this action and bound by the allocation declaration issued by the Court. If it is not, C&W may be faced with the need to re-litigate the issue with ACE and with the possibility of inconsistent verdicts on the issue. The Declaratory Judgment Act is intended to enable just such a global resolution of conflicting contentions in their entirety and with expediency and economy. *See Duggins v. Hunt*, 323 F.2d 746, 748 (10th Cir. 1963) ("The general purpose of the Declaratory Judgment Act, 28 U.S.C.A. §§ 2201, 2202, is to provide an immediate forum for the adjudication of rights and obligations in actual controversy where such controversy may be settled in its entirety and with expediency and economy."); *see also Tempco Elec. Heater Corp. v. Omega Eng'g, Inc.*, 819 F.2d 746, 749 (7th Cir. 1987).

That is particularly true given the fact that ACE has asserted the right to raise numerous additional defenses to coverage once its coverage layer has been triggered. (Motion, Exhibit E

("we must continue to reserve all of ACE's rights under our policies and those of the primary and excess policies to which we follow form").) As an initial matter, that reservation belies ACE's assertion that it "expressly adopted the same coverage position as [C&W], precluding any ripe or justiciable controversy between ACE and [C&W] on that key point." (Motion at 8.) It also demonstrates an actual controversy between ACE and C&W with respect to coverage under the 2009-10 ACE policy, and establishes that the parties have "adverse legal interests, of sufficient immediacy and reality to warrant issuance of a declaratory judgment." *Hickman v. Wells Fargo Bank N.A.*, 683 F. Supp. 2d 779, 789 (N.D. Ill. 2010) (citations omitted).

Indeed, those disputes would exist, and entitle C&W to seek declaratory relief, even if the attachment point of the ACE policy had not yet been reached. Courts have routinely held declaratory relief is appropriate against excess carriers, even if their limits have not been reached, where there is pending underlying litigation, because "Article III requires only probabilistic injury." *Bankers Trust Co. v. Old Republic Ins. Co.*, 959 F.2d 677, 681 (7th Cir. 1992) (declaratory relief permitted to determine whether insurer must indemnify insured up to limits of policy if underlying plaintiff won judgment in underlying suit). A policyholder's claim for declaratory judgment of the rights and obligations under an excess policy is ripe even before the excess policy has actually been triggered, as long as there is a sufficient probability or practical likelihood that it will be. *See id.* at 680 (declaratory judgment proper where harm was "sufficiently probable" to implicate excess policy); *see also E.R. Squibb*, 241 F.3d at 177-78 (declaratory judgment proper regarding "high level" excess insurers because of "practical likelihood" of reaching policies ); *American Home Assurance Co. v. Swanson*, No. 93 C 383, 1993 WL 155501, at *3 (N.D. Ill. May 10, 1993) (citing *Bankers Trust* and finding "real

disagreement" existed regarding limits of liability and likelihood of triggering coverage was "not

so slight that [insurer had] nothing practical at stake").[6]

Further, because the Illinois National policy covers the costs of C&W's defense (ECF

No. 1, ¶¶ 23-28), ACE's reliance on cases refusing to entertain declaratory judgment actions

until after a determination of the policyholder's underlying liability[7] is wholly misplaced.  *See*

*Nautilus Ins. Co. v. Vuk Builders, Inc.*, 406 F. Supp. 2d 899, 906 (N.D. Ill. 2005) ("*Unlike the*

*duty to defend,* the Seventh Circuit has held that 'decisions about indemnity should be postponed

until the underlying liability has been established.'") (emphasis added; quoting *Lear*).  The

Complaint in this action alleges that Illinois National already has failed and refused to pay

amounts currently due and owing in connection with the ongoing defense of the underlying

claims.  (ECF No. 1, ¶¶ 51, 118.)  In turn, Illinois National has specifically alleged that if the

underlying claims are allocated to a single policy year, the Illinois National policy for that year –

to which ACE is immediately excess – has been exhausted by such payments.  (ECF No. 84, ¶¶ 3,

35.)[8]  Accordingly, the coverage dispute between ACE and C&W is substantial, immediate, and

more than sufficient to support the Third Cause of Action for Declaratory Judgment.

---

[6] In contrast, in *Eli Lilly & Co. v. Arch Insurance Co.*, No. 1:13-cv-01770-LJM, 2014 WL 1049068 (S.D. Ind. Mar. 18, 2014) (cited in Motion at 7), the court held that there was "no determination of [the policyholder's underlying] liability in any amount, much less a determination that [the policyholder's] other insurance policies will not cover it."  *Id.* at \*3.  ACE's reliance on *Forest Laboratories, Inc. v. Arch Insurance Co.*, 984 N.Y.S.2d 361 (App. Div. 2014), and *Ali v. Federal Insurance Co.*, 719 F.3d 83 (2d Cir. 2013) (Motion at 6), is also inapt, as those courts addressed the question of the events necessary to trigger the excess coverage on the merits.

[7] (*See* Motion at 7, citing *Lear Corp. v. Johnson Electric Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003) (indemnity obligation could not be determined and defendant had no obligation to defend); *Nationwide Ins. Co. v. Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995) (indemnity obligation could not be determined because underlying liability not yet fixed); *Grinnell Mut. Reinsurance Co. v. Reinke*, 43 F.3d 1152, 1154 (7th Cir. 1995) (same); *Travelers Ins. Co. v. Penda Corp.*, 974 F.2d 823, 833 (7th Cir. 1992) (same).)

[8] Those allegations and their reasonable inferences establish a ripe controversy between ACE and C&W. But, if the Court holds that the Complaint must contain an express alternative allegation that the Illinois National payments are sufficient to exhaust the 2009-10 Illinois National policy, C&W seeks leave to replead.  *See* Fed. R. Civ. P. 15(a); *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008).

III. **C&W'S NINTH CAUSE OF ACTION SUFFICIENTLY PLEADS THAT ACE BREACHED ITS POLICY OBLIGATIONS BY FAILING TO PROVIDE A TIMELY COVERAGE POSITION**

C&W's Ninth Cause of Action alleges that ACE has breached its policy obligations by failing to provide C&W with a timely statement of its coverage position. (ECF No. 1, ¶¶ 59-63.) Courts throughout the country, including in Illinois and New York,[9] have found that such delays can constitute a breach of the insurance contract. *See Computer Strategy Coordinators, Inc. v. Philadelphia Indem. Ins. Co.*, No. 02 C 8913, 2003 WL 21317294, at *3-4 (N.D. Ill. June 6, 2003) (breach of contract sufficiently pled with allegations that insurer failed to protect the insured's interest "by deliberately delaying" settlement of underlying claim); *see also Brooks v. Zurich-Am. Ins. Grp.*, 753 N.Y.S.2d 454, 456 (App. Div. 2002) (reinstating breach of contract cause of action based on insurer's failure to respond to claims for 15 months, then taking 16 months to review evidence, and then denying on unsupported allegations); *Richard Avedon Found. v. AXA Art Ins. Corp.*, No. 151435/2014, slip op. at 22 (N.Y. Sup. Ct. Feb. 4, 2015) (allegations that insurer engaged in claims handling delays properly stated a claim for breach of contract) (attached as Ex. A). Allegations that the defendant breached the obligations of good faith inherent in every contract, which include the obligation to perform contractual obligations without undue delay, support a breach of contract claim. *See ABN AMRO Bank, N.V. v. MBIA*

---

[9] Absent an actual conflict between the law of New York and Illinois that will make a difference in the outcome of the Motion, the Court need not, and should not, engage in a choice-of-law analysis at this early stage of the litigation. *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905, 908-09, 2014 IL 116389 (2014); *see also Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 398 n.1 (7th Cir. 2009). In addition, as the party asking the Court to make that choice-of-law determination, ACE bears the burden of proving the existence of such an actual conflict. *Bridgeview Health Care*, 10 N.E.3d at 905. ACE cites no conflict that would result in a different result with respect to its attack on the Ninth Cause of Action under Illinois or New York law; indeed there is none, as the standards applicable are the same in both jurisdictions. *Compare Allstate Ins. Co. v. Winnebago Cnty. Fair Ass'n, Inc.*, 475 N.E.2d 230, 131 Ill. App. 3d 225, 233 (2d Dist.1985), *with Marshall v. Hyundai Motor Am.*, No. 12-CV-3072, 2014 WL 5011049, at *12 (S.D.N.Y. Sept. 30, 2014). ACE's unsupported allegation that C&W has engaged in "forum shopping" by bringing this action, which includes claims against its primary insurer Illinois National, an Illinois resident, in an Illinois court, thus is as irrelevant as it is baseless.

*Inc.*, 17 N.Y.3d 208, 228 (2011) ("[W]e likewise conclude that plaintiffs pleaded a viable cause of action for breach of contract based upon a breach of the implied covenant of good faith.").

Indeed, even the cases cited by ACE support that conclusion. In particular, ACE relies on *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 837 F. Supp. 2d 162 (S.D.N.Y. 2011), for the proposition that the Ninth Cause of Action defectively fails to identify a specific policy term that ACE breached. (Motion at 10.) However, the court in *Ellington* upheld the policyholder's claim that the insurer had breached its obligation to provide the policyholder with notices required under the policy promptly when required. *Id.* at 189, 191. And, it dismissed the other two forms of breach alleged not simply because they failed to identify the contractual obligation breached, but because the contract did not impose those obligations.[10] *Id.* In addition, *Dalton v. Educational Testing Service*, 87 N.Y.2d 384, 389 (1995), on which ACE also relies (Motion at 12), actually supports C&W here by recognizing that "[e]ncompassed within the implied obligation of each promisor to exercise good faith are any promises which a reasonable person in the position of the promisee would be justified in understanding were included."

In short, ACE's argument that the Ninth Cause of Action fails to "specify" a provision breached by ACE fails. Rather, as the cases cited above hold, the Ninth Cause of Action's allegation that ACE failed and refused to provide C&W with a timely coverage decision constitutes a valid claim for breach of ACE's obligation of good faith and fair dealing.

---

[10] The other cases on which ACE relies on this point are similarly inapt. In *Bowen v. Patrick*, No. 11 Civ. 4799, 2012 WL 3743409, at *12-13 (S.D.N.Y. Aug. 29, 2012) (cited in Motion at 10), the court held that the plaintiff, who claimed to be a third-party beneficiary under the contract, failed to allege facts that the contract was intended for his benefit. Here, there is no dispute that C&W is the named insured under the policy. Similarly, in *Abu Dhabi Commercial Bank v. Morgan Stanley & Co. Inc.*, 651 F. Supp. 2d 155, 183 (S.D.N.Y. 2009) (cited in Motion at 10), the court dismissed the breach of contract claim not because the complaint merely failed to identify the specific contractual provision breached, but because it failed to contain allegations sufficient to plead the existence of any contract at all: "Because plaintiffs fail to plead the existence of any contract that they can enforce, plaintiffs' contract claims are dismissed."

Nor is ACE entitled to dismissal of the Ninth Cause of Action based on its assertion that C&W has failed to allege any form of compensable damages resulting from that breach. The Complaint specifically alleges that "as a result of ACE's breach, and its decision to sit on the sidelines for months before taking any formal position with respect to Illinois National's claims, C&W has been forced to expend resources responding to what should be an intra-insurer coverage dispute." (ECF No. 1, ¶ 132.) Both New York and Illinois permit the recovery of such extra-contractual damages in certain circumstances, including those implicated by the allegations of the Ninth Cause of Action. *See Donnelly v. Washington Nat. Ins. Co.*, 482 N.E.2d 424, 136 Ill. App. 3d 78, 86 (1st Dist. 1985) ("Foreseeable consequential damages of the breach of an insurance contract are recoverable."); 215 ILCS 5/155; *see also Freed v. Travelers*, 300 F.2d 395, 399 (7th Cir. 1962); *Sukup v. State*, 19 N.Y.2d 519, 522 (1967) (insured may seek extra-contractual damages in the form of attorney's fees where an insurer engages in "such bad faith in denying coverage that no reasonable carrier would, under the given facts, be expected to assert it"); *Acquista v. N.Y. Life Ins. Co.*, 730 N.Y.S.2d 272, 278-79 (App. Div. 2001) (allowing an award of extra-contractual damages incurred as a result of insurer delays).

Once again, that conclusion also is supported by ACE's own cited authority. In *Bi-Economy Market, Inc. v. Harleysville Insurance Co. of New York*, 10 N.Y.3d 187 (2008) (cited in Motion at 15), the court held that a policyholder can recover the consequential damages necessary to make it whole when an insurer violates the bargained-for reasonable expectation of prompt coverage. In refusing to dismiss the policyholder's claim for consequential damages, the Court held that "limiting an insured's damages to the amount of the policy, i.e., money which should have been paid by the insurer in the first place, plus interest, does not place the insured in the position it would have been in had the contract been performed." *Id.* at 195.

Nor, contrary to ACE's contention, does the "American Rule" bar recovery of a policyholder's consequential damages which consists of attorney's fees incurred.[11]  (Motion at 11.)  To the contrary, as the court held in *Chernish v. Massachusetts Mutual Life Insurance Co.*, No. 5:08-CV-0957, 2009 WL 385418, at *5 (N.D.N.Y. Feb. 10, 2009) in evaluating the plaintiff's entitlement to attorney's fees, "*Bi-Economy Market* has changed the landscape.  The pleading stage is too early in the litigation to resolve Plaintiff's entitlement to attorney's fees."[12]

Dismissal of the Ninth Cause of Action, or of C&W's claims for attorney's fees in general, would be similarly improper.  The Complaint's specific allegations that C&W incurred extra-contractual damages as a direct and foreseeable result of ACE's breach of its obligations of good faith fully support that claim, and require that ACE's motion be denied.

## IV. THE TWELFTH CAUSE OF ACTION PROPERLY PLEADS A CAUSE OF ACTION FOR TORTIOUS BAD FAITH

ACE characterizes C&W's Twelfth Cause of Action as "duplicative" of its breach claim, but ignores that C&W alleges far more than the delay in issuing a coverage determination that is the basis of the Ninth Cause of Action for breach.[13]  The Twelfth Cause of Action alleges a

---

[11] ACE's American Rule argument ignores that C&W seeks the consequential fees it incurs in pursuing Illinois National as opposed to ACE (*see* ECF No. 1, ¶¶ 63, 132); the American Rule only bars recovery by a prevailing party of the costs of a lawsuit.  *See Brundridge v. Glendale Fed. Bank, F.S.B.*, 659 N.E.2d 909, 168 Ill. 2d 235 (1995).  And, ACE's American Rule argument is really an attack on the merits of the Complaint's damage allegations.  (*See* Motion at 9-11.)  ACE's attempt to have the Court adjudicate the substance of C&W's allegations at this early stage is improper, and ACE's motion to dismiss on that ground should be rejected for that reason alone.  *See, e.g.*, *United States v. Broadway Constr., Inc.*, No. 97 C 8284, 1998 WL 246385, at *2 (N.D. Ill. Apr. 24, 1998) ("The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the sufficiency of the complaint, not to decide the merits of the case.").

[12] For this same reason, the earlier case of *New York University v. Continental Insurance Co.*, 87 N.Y.2d 308, 324 (1995), and the non-insurance case of *Silva v. F.R. Real Estate Development Corp.*, 870 N.Y.S.2d 328 (App. Div. 2009), on which ACE relies (Motion at 14), do not warrant dismissal, as neither takes into account *Bi-Economy*'s express recognition that a policyholder may be entitled to recover consequential damages resulting from an insurer's breach of its obligations of good faith.

[13] It is also internally inconsistent.  On the one hand, ACE argues that none of the wrongful conduct alleged in the Complaint can constitute a breach of contract because those actions do not relate to a particular policy provision.  On the other, it argues that those actions cannot support a claim of insurer

tortious course of conduct, including ACE's multiple misrepresentations to C&W that it would provide its coverage position, its failure to provide its position despite Illinois National's repeated assertions that only one year of coverage applied and that its policy was about to exhaust, and ACE's failure to investigate Illinois National's statements. (ECF No. 1, ¶¶ 11, 58-63, 149, 152.) It is also based on allegations that ACE deliberately induced C&W to enter into the April 14, 2014, Standstill Agreement on seemingly intentionally false pretenses that it would make defense payments. (ECF No. 1, ¶¶ 66-67, 149(d)). *Cf. Channel Master Corp. v. Aluminum Ltd. Sales*, 4 N.Y.2d 403, 406-07 (1958) (where a party has fraudulently induced the plaintiff to enter into a contract, it may be liable in tort). Finally, it asserts that ACE put its own financial interests above those of C&W in a "vexatious and unreasonable" manner. (ECF No. 1, ¶ 151.)

Those allegations not only are *not* duplicative of the actions supporting the Ninth Cause of Action – thus rendering the cases upon which ACE relies inapposite[14] – they meet the standards for a claim of bad faith insurer conduct under both Illinois and New York law. As ACE admits, Illinois provides statutory remedies for insurer bad faith. (Motion at 12, citing 215 ILCS 5/155 and *Markel Am. Ins. Co. v. Dolan*, 787 F. Supp. 2d 776, 778-79 (N.D. Ill. 2011)); *see also Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 186 Ill. 2d 127,

---

bad faith, because they are identical to conduct claimed to be a breach of contract. Even if the wrongs at issue in the Ninth and Twelfth Causes of Action were identical – which, as set forth above, they are not – ACE cannot have it both ways, by arguing that the wrongs alleged both cannot support a claim for breach and are so "duplicative" of the breach claim that they also cannot sound in tort.

[14] (*See* Motion at 12-13, citing *Sikarevich Family L.P. v. Nationwide Mut. Ins. Co.*, No. 13-cv-05564, 2014 WL 3127729 (E.D.N.Y. July 3, 2014) (bad faith claim based solely on failure to comply with policy); *Washington v. Kellwood Co.*, No. 05 Civ. 10034, 2009 WL 855652, at *6 (S.D.N.Y. Mar. 24, 2009) (plaintiff's bad faith claim based on stated "breach of the terms of each agreement" is "necessarily duplicative of a breach of contract claim"); *Peter Lampack Agency, Inc. v. Grimes*, 958 N.Y.S.2d 310, at *2 n.1 (Sup. Ct. 2010) (allegation that party refused to account and pay sums due under agreement was not sufficient to establish separate bad faith claim).) ACE's reliance on *Egan Marine Corp. v. Great American Insurance Co. of New York*, 665 F.3d 800, 813 (7th Cir. 2011) in support of this motion to dismiss (Motion at 13) is particularly inapt, as the court in that case *refused* to grant summary judgment with respect to the bad faith claim, and dismissed it only after a full trial on the merits showed that the conduct underlying the bad faith claim was "the same conduct generating a breach of contract claim."

160 (1999); *Siwek v. White*, 905 N.E.2d 278, 388 Ill. App. 3d 152, 160 (1st Dist. 2009). Similarly, under New York law, where a party engages in conduct outside the contract but intended to defeat the contract, its conduct can support an independent tort claim for bad faith. *See North Shore Bottling Co. v Schmidt & Sons*, 22 N.Y.2d 171, 179 (1968) ("a contracting party may be charged with a separate tort liability arising from a breach of a duty distinct from, or in addition to, the breach of contract"); *see also Channel Master*, 4 N.Y.2d at 406-07.[15]

ACE's attempt to justify its request for dismissal of the Twelfth Cause of Action based on its substantive attack on the merits of that claim is both improper in the context of this motion to dismiss, and wrong on the facts. In particular, ACE asserts that it is "at a loss to understand how ACE, an excess insurer that went out of its way to reasonably assist its insured . . . is on the receiving end of allegations that it somehow acted in 'bad faith' in doing so." (Motion at 12.) The well-pled allegations of the Complaint, which not only must be accepted as true, but are true, tell a wholly different story – one of an insurer who put its own financial interests ahead of its policyholder's, refusing to provide written coverage determinations it knew the policyholder needed, stringing the policyholder along and playing both sides against the middle to delay as long as possible both the need to engage in what is essentially an intra-insurer dispute and the possibility that it might lose that dispute and have to begin paying its policyholder. That is a classic bad faith story, sufficient to support C&W's Twelfth Cause of Action.

## V.     ACE IS NOT ENTITLED TO DISMISS C&W'S PUNITIVE DAMAGES CLAIM

There may be a conflict in the law applicable to C&W's claim for punitive damages. However, contrary to ACE's contention, the rules applicable to resolving that conflict are not

---

[15] ACE again fails to show a conflict of law on this issue that would justify a choice-of-law determination. In particular, ACE's reliance on *New York University* to establish such a conflict (Motion at 12 n.2) ignores the court's express recognition that the *Channel Master* and *North Shore* lines of cases supported the proposition that a party in a contractual relationship may be liable in tort for damages caused to the other party which arise from conduct beyond its express contractual obligations. 87 N.Y 2d at 316.

14

those that control the choice of law applicable to the interpretation and application of insurance policies (Motion at 3), but instead are those that control the choice of law applicable to tort claims and, in particular, requests for punitive damages. *See American Int'l Group, Inc. v. ACE INA Holdings, Inc.*, 722 F. Supp. 2d 948, 971 (N.D. Ill. 2010), *vacated in part on reconsideration on other grounds*, No. 07C2898, 2010 WL 3730980 (N.D. Ill. Sept. 16, 2010) (citing Restatement (Second) of Conflict of Laws §145). As ACE has not even addressed the criteria for the applicable test, which also implicates Pennsylvania[16] (both ACE's residence (ECF No. 1, ¶ 16) and where the claims handling causing the injury may have occurred (Motion, Exhibit A, at 1, 2)), ACE has not met its burden of proof on choice of law at this juncture, and its motion to dismiss C&W's claim for punitive damages should therefore be denied.

## CONCLUSION

For the foregoing reasons, C&W respectfully requests that ACE's Motion to Dismiss be denied. In the alternative, if the Court grants any part of ACE's motion, C&W requests it be given the opportunity to amend its Complaint.

Date: February 27, 2015

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

By: _____ *s/ Robin L. Cohen* _____

John H. Mathias, Jr.
Christopher C. Dickinson
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 923-2917

Robin L. Cohen, admitted *pro hac vice*
Adam S. Ziffer, admitted *pro hac vice*
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
rcohen@kasowitz.com
aziffer@kasowitz.com

*Attorneys for Plaintiff Cushman & Wakefield, Inc.*

---

[16] Pennsylvania, like Illinois, does not require that conduct be aimed at the public generally to support a punitive damage award. *See Feingold v. Liberty Mut. Grp.*, 847 F. Supp. 2d 772, 776 (E.D. Pa. 2012) (punitive damages may be awarded where defendant's conduct demonstrates willful, wanton or reckless conduct, and are designed to punish the wrongdoer and deter others from such conduct).

**CERTIFICATE OF SERVICE**

The undersigned, an attorney, hereby certifies that on February 27, 2015 the above and foregoing was electronically filed with the Clerk of Court using the CM/ECF system and that a true and correct copy was served on all counsel of record by CM/ECF Electronic Notification.

Date: February 27, 2015

KASOWITZ, BENSON, TORRES & FRIEDMAN LLP

By:  _____ s/ Robin L. Cohen _____

Robin L. Cohen, admitted *pro hac vice*
Adam S. Ziffer, admitted *pro hac vice*
1633 Broadway
New York, New York 10019
Telephone: (212) 506-1700
Fax: (212) 506-1800
rcohen@kasowitz.com
aziffer@kasowitz.com

AND

John H. Mathias, Jr.
Christopher C. Dickinson
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
Telephone: (312) 923-2917
Fax: (312) 840-7317

*Attorneys for Plaintiff*
*Cushman & Wakefield, Inc.*

16