## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CUSHMAN & WAKEFIELD, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 14 C 8725 |
| v. | ) | |
| | ) | Judge Joan H. Lefkow |
| ILLINOIS NATIONAL INSURANCE | ) | |
| COMPANY, ACE AMERICAN | ) | |
| INSURANCE COMPANY, LIBERTY | ) | |
| MUTUAL INSURANCE COMPANY, | ) | |
| and RLI INSURANCE COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

Cushman & Wakefield, Inc. ("Cushman") filed a twelve-count complaint against Illinois National Insurance Company ("Illinois National"), ACE American Insurance Company ("ACE"), Liberty Mutual Insurance Company ("Liberty"), and RLI Insurance Company ("RLI") seeking a declaration of insurance coverage with respect to certain underlying matters. (Dkt. 1 ("Compl.").) Cushman also brings claims for breach of contract and breach of the implied covenant of good faith and fair dealing. (*Id.*) ACE has moved to dismiss three of the four claims brought against it (counts III, IX, and XII) pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Dkt. 63.) ACE has also moved to strike Cushman's requests for consequential damages, attorney's fees, and punitive damages. (*Id.*) For the reasons stated below, ACE's motion is granted in part and denied in part.[1]

---

[1] The court has jurisdiction pursuant to 28 U.S.C. § 1332. Venue is proper in this district under 28 U.S.C. § 1391(b).

BACKGROUND[2]

## I.    The Parties

Cushman is a corporation organized under the laws of New York, with its principal place

of business in New York.  (Compl. ¶ 14.)  Cushman is the world's largest privately held

commercial real estate services firm and offers, among other things, real estate appraisal services

for a variety of property types.  (*Id.* ¶ 2.)

Both Illinois National and RLI are corporations organized under the laws of Illinois, with

their principal places of business in Illinois.[3]  (*Id.* ¶¶ 15, 18.)  ACE is a Pennsylvania corporation

and maintains its principal place of business in Pennsylvania.  (*Id.* ¶ 16.)  Liberty Mutual is a

corporation organized under the laws of Massachusetts, with its principal place of business in

Massachusetts.  (*Id.* ¶ 17.)  The defendants are insurance companies that sold Cushman the

claims-made excess insurance policies discussed below.

## II.    The Insurance Policies

Between 2009 and 2013, Cushman arranged its insurance policies in tiers, with each level

of policy designed to kick in when the coverage provided by the lower level of insurance became

exhausted.  Nottingham Indemnity, Inc. ("Nottingham") served as Cushman's primary insurer

during this time period and provided Cushman $2 million in coverage for each respective policy

year.  (*Id.* ¶ 23.)  Under "the Nottingham Policies," Nottingham agreed to indemnify Cushman

for "all sums in excess of the Deductible which the Insured shall become legally obligated to pay

---

[2] Unless otherwise indicated, the following facts are taken from the complaint and are presumed true for the purpose of resolving the pending motion.  *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).

[3] Illinois National previously moved to dismiss the complaint for lack of subject matter jurisdiction on the ground that it maintains its principal place of business in New York, not Illinois, thereby destroying complete diversity in this case.  (Dkt. 58.)  The court denied the motion, finding that "Cushman has shown by a preponderance of the evidence that Illinois National's principal place of business is, as its name suggests, in Illinois."  (Dkt. 79 at 5.)

as Damages and Claims Expenses for claims first made against the Insured during the Policy Period . . . as a result of a Wrongful Act of the Insured . . . aris[ing] out of the rendering or failure to render Professional Services." (*Id.* ¶ 24 (first alteration in original).)  The Nottingham Policies also agreed to defend Cushman and provided that Nottingham had "the sole right to appoint counsel and the right and duty to defend any Claim or Suit brought against the Insured seeking Damages on account of a Wrongful Act even if such Claim or Suit is groundless, false or fraudulent." (*Id.* ¶ 25.)  Each of the excess policies issued to Cushman by the defendants is subject to all of the terms and conditions of the Nottingham Policies, unless expressly stated otherwise, and thus contains both indemnity and defense obligations.  (*Id.* ¶¶ 23, 28, 30, 32.)

Illinois National served as Cushman's first-level excess insurer between 2009 and 2013 and sold Cushman four insurance policies during that time period ("the Illinois National Policies") that sat directly above the Nottingham Policies:

> (1) Policy No. 01-911-84-71, which was in effect from May 31, 2009 to May 31, 2010 and provided $23 million in coverage for sums exceeding $2 million;
>
> (2) Policy No. 01-877-33-21, which was in effect from May 31, 2010 to May 31, 2011 and provided $23 million in coverage for sums exceeding $2 million;
>
> (3) Policy No. 01-880-59-08, which was in effect from May 31, 2011 to June 30, 2012 and provided $23 million in coverage for sums exceeding $2 million; and
>
> (4) Policy No. 0230588092, which was in effect from June 30, 2012 to August 31, 2013 and provided $15 million in coverage for sums exceeding $2 million.

(*Id.* ¶ 21.)

ACE served as Cushman's second-level excess insurer for the 2009–10 policy year and sold Cushman Policy No. XEO G23658495 ("the ACE Policy"), which was in effect from May

31, 2009 to May 31, 2010. (*Id.* ¶ 27.) The ACE Policy provided $10 million in coverage for sums exceeding $25 million. (*Id.* ¶ 27–28.)

Liberty and RLI served as Cushman's third-level excess insurers for the 2009–10 policy year. Liberty sold Cushman Policy No. EO5N454658004 ("the Liberty Policy"), which was in effect from May 31, 2009 to May 31, 2010. (*Id.* ¶ 29.) Similarly, RLI sold Cushman Policy No. EPG0009165 ("the RLI Policy"), which was in effect from May 31, 2009 to May 31, 2010. (*Id.* ¶ 31.) Both policies sat directly above the ACE Policy, and each provided $7.5 million in coverage for sums exceeding $35 million, for a total of $15 million in coverage. (*Id.* ¶¶ 29–32.)

Thus, the arrangement of Cushman's insurance policies for the 2009–10 policy year can be illustrated by the following chart:

| Level of Insurance | Insurance Company | Amount of Coverage |
|---|---|---|
| Primary Insurer | Nottingham | $2 million |
| First-Level Excess Insurer | Illinois National | $23 million for sums exceeding $2 million |
| Second-Level Excess Insurer | ACE | $10 million for sums exceeding $25 million |
| Third-Level Excess Insurer | Liberty | $7.5 million for sums exceeding $35 million |
| Third-Level Excess Insurer | RLI | $7.5 million for sums exceeding $35 million |

### III.   The Underlying Claims

Between 2004 and 2007, Credit Suisse AG ("Credit Suisse") retained Cushman to provide real estate appraisals for loans made to developers of large, master-planned residential communities. (*Id.* ¶ 3.) In performing the appraisals, Cushman used the "total net value" methodology. (*Id.*) When several of the loans went into default between 2008 and 2010, litigation against Cushman, and others, ensued. (*Id.*) Many of the claims challenged Cushman's use of the total net value appraisal method. (*See, e.g.*, *id.* ¶ 43.)

Although Cushman alleges that other claims have been made against it arising out of the Credit Suisse appraisals (*id.* ¶ 69), the complaint discusses four claims in particular:  (1) a January 2010 putative class action lawsuit filed in the District of Idaho by owners of properties in residential communities appraised by Cushman ("the *Gibson* case"); (2) an August 2010 claim by a hedge fund that extended loans based on Cushman's appraisals;[4] (3) a February 2012 lawsuit filed in the District of Colorado by a shareholder in a developer of one of the residential communities Cushman appraised; and (4) a January 2013 third-party complaint filed in the United States Bankruptcy Court for the District of Nevada by the developer of a residential community that Cushman appraised.  (*Id.* ¶¶ 4, 33, 36, 38, 43.)  Although not addressed in the complaint, the parties' briefs state that only the *Gibson* case is still pending.  (*See, e.g.*, dkt. 96 at 4.)

## IV.    Illinois National's Response to the Underlying Claims

Cushman gave Illinois National and the other defendants timely notice of each of the underlying claims.  (Compl. ¶ 45.)  At first, Illinois National responded by agreeing to defend Cushman against each claim, subject to a reservation of rights.  (*Id.*)  In addition, Illinois National initially treated each underlying claim as triggering the policy year in which the claim was made.  (*Id.* ¶ 46.)  This treatment was beneficial to Cushman because insurance coverage for the underlying claims would be spread out over multiple policy years, decreasing the likelihood that the limits of the Illinois National Policies would be exceeded.

But once additional lawsuits were filed against Cushman and it became clear that Cushman's, and therefore, Illinois National's, exposure could be substantial, Illinois National changed its tune.  (*Id.* ¶ 49.)  Illinois National began to cite coverage exclusions in the Illinois National Policies as a basis for potentially denying coverage for the underlying claims in the

---

[4] This claim did not result in the filing of a lawsuit against Cushman.  (Compl. ¶ 4.)

future.  (*Id.* ¶ 50.)  Further, on November 15, 2012, Illinois National sent Cushman a letter indicating for the first time that it would treat any claims arising from the Credit Suisse appraisals as a single related claim triggering only the 2009–10 policy year, thus restricting its exposure to a single set of policy limits.  (*Id.* ¶ 51.)  Illinois National in April 2013, however, accepted its duty to defend an underlying lawsuit under the 2012–13 policy.  (*Id.* ¶ 52.)  Illinois National later withdrew its acceptance and stated that the underlying lawsuit triggered only the 2009–10 policy.  (*Id.* ¶ 53.)

Cushman also alleges that Illinois National began to threaten Cushman that if it did not accept Illinois National's position that the underlying claims triggered only the 2009–10 policy year, Illinois National would not renew Cushman's coverage for the 2013–14 policy year and would assert policy exclusions as a basis to deny coverage to Cushman altogether.  (*Id.* ¶ 54.)  When Cushman did not agree, Illinois National acted on its threat and began to raise numerous policy exclusions.  (*Id.* ¶ 55.)  Cushman was forced to expend considerable resources to demonstrate that the exclusions did not apply, only to have Illinois National raise additional coverage defenses.  (*Id.*)  Cushman alleges that Illinois National continues to raise unsupported coverage defenses to this day.

## V.     ACE's Response to the Underlying Claims

When Illinois National adopted the position that the underlying claims triggered only the 2009–10 policy year, Cushman asked ACE to provide its position on the issue.  (*Id.* ¶ 60.)  In September 2013, ACE verbally informed Cushman that it disagreed with Illinois National's stance and believed that the underlying claims triggered multiple policy years.  (*Id.*)  ACE also represented in September and October of 2013 that it would promptly provide its position in writing.  (*Id.* ¶ 61.)  ACE, however, failed to do so, and only on January 30, 2014 did ACE

provide a written statement that the underlying claims triggered multiple policy years.  (*Id.* ¶ 62.)

Cushman asserts that had ACE responded sooner, Illinois National would have abandoned its

position that the underlying claims fell under the 2009–10 policy year, thus resolving Cushman's

coverage dispute with Illinois National.  (*Id.* ¶ 63.)

## VI.     The Standstill Agreement

In April 2014, Cushman, Illinois National, and ACE entered into a "Standstill

Agreement" in which Illinois National and ACE each agreed to pay 50% of Cushman's defense

costs in the underlying claims; in exchange, Cushman promised not to pursue coverage litigation

until August 30, 2014.  (*Id.*)  Cushman, Illinois National, and ACE extended the agreement for

one month on August 26, 2014, and again on September 30, 2014.  (*Id.* ¶ 65.)  Despite agreeing

to cover the costs of Cushman's defense, however, neither Illinois National nor ACE has made

any payments.  (*Id.* ¶ 67.)  According to Cushman, both insurers have asked Cushman to provide

them with additional information and documents, much of which the insurers already have in

their possession.[5]  (*Id.*)

## ANALYSIS

## I.     12(b)(1) Motion to Dismiss Count III for Lack of Subject Matter Jurisdiction

ACE first argues that count III of Cushman's complaint should be dismissed for lack of a

justiciable case or controversy because Cushman has not alleged that its lower-tiered insurance

policies have been exhausted.  *See* Fed. R. Civ. P. 12(b)(1).  Count III seeks a declaration that

"ACE must pay under the triggered ACE 2009–10 Policy all amounts incurred in connection

---

[5] Although the complaint lacks specific allegations as to Liberty and RLI, Cushman maintains
that these defendants are included "in this action to permit a global resolution of the proper allocation of
the" underlying claims.  (*Id.* ¶ 13.)  Cushman seeks declarations that Liberty and RLI must pay all
amounts incurred in connection with each underlying claim that exceed the limits of the ACE Policy,
provided that the court determines that the underlying claims trigger only the 2009–10 policy year.  (*Id.*
¶¶ 99, 105.)

with each Underlying Claim that are in excess of the Illinois National 2009–10 Policy, up to the limits of the ACE 2009–10 Policy," provided that the court determines that the underlying claims trigger only the 2009–10 policy year.  (*Id.* ¶ 93.)

The Declaratory Judgment Act limits issuance of a declaratory judgment to cases of "actual controversy."  28 U.S.C. § 2201(a).  If no actual controversy exists, the court lacks subject matter jurisdiction to consider the claim.  *Aetna Life Ins. Co. of Hartford, Conn.* v. *Haworth*, 300 U.S. 227, 239–40, 57 S. Ct. 461, 81 L. Ed. 617 (1937); *Alcan Aluminum Ltd.* v. *Dep't of Revenue of State of Or.*, 724 F.2d 1294, 1298 (7th Cir. 1984).  "The test for whether an action for declaratory relief presents an actual controversy for resolution turns on whether 'there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.'"  *Alcan Aluminum Ltd.*, 724 F.2d at 1298 (quoting *Md. Cas. Co.* v. *Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S. Ct. 510, 85 L. Ed. 826 (1941)).  The "'actual controversy' requirement is equivalent to Article III's case-or-controversy requirement and thus incorporates Article III doctrines of ripeness and standing."  *Geisha, LLC* v. *Tuccillo*, 525 F. Supp. 2d 1002, 1009–10 (N.D. Ill. 2007) (internal citation omitted); *see also Coffman* v. *Breeze Corp.*, 323 U.S. 316, 324, 65 S. Ct. 298, 89 L. Ed. 264 (1945) (noting that a declaratory judgment "may not be made the medium for securing an advisory opinion in a controversy which has not arisen").  The party seeking jurisdiction bears the burden of demonstrating that an actual controversy exists, *Geisha, LLC*, 525 F. Supp. 2d at 1010 (citation omitted), and even if jurisdiction is proper, the court has discretion to decline to exercise it.  *Int'l Harvester Co.* v. *Deere & Co.*, 623 F.2d 1207, 1217 (7th Cir. 1980).

Declaratory judgment actions in the insurance context often involve contingencies, and the fact "[t]hat the liability may be contingent does not necessarily defeat jurisdiction."

*Associated Indem. Corp.* v. *Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992) (citations

omitted). Indeed, "'whether an insurer is liable on a policy issued to an insured for injuries

sustained by a third party' is 'one common to typical disputes over insurance coverage' and ripe

for adjudication in declaratory judgment actions in federal court." *Tocci Bldg. Corp. of N.J., Inc.*

v. *Va. Sur. Co.*, 750 F. Supp. 2d 316, 321 (D. Mass. 2010) (quoting *Twin City Fire Ins. Co.* v.

*Innovative Aftermarket Sys., L.P.*, 597 F. Supp. 2d 295, 300 (D. Conn. 2009)). Consequently,

"litigation over insurance coverage has become the paradigm for asserting jurisdiction despite

future contingencies that will determine whether a controversy ever actually becomes real."

*Associated Indem. Corp.*, 961 F.2d at 35 (citations omitted) (internal quotation marks omitted).

Similarly, in the context of excess insurance policies, the fact "that the liability of an

excess insurer is contingent does not *per se* defeat jurisdiction over a declaratory judgment."

*UnitedHealth Grp., Inc.* v. *Lexington Ins. Co.*, No. 05-1289, 2006 WL 695523, at *3 (D. Minn.

Mar. 17, 2006) (citation omitted). Rather, in determining whether a declaratory judgment action

involving an excess insurer is ripe for adjudication, "courts should focus on 'the practical

likelihood that the contingencies will occur.'" *Associated Indem. Corp.*, 961 F.2d at 35 (quoting

10A C. Wright, A. Miller & A. Kane, Federal Practice and Procedure § 2757 at 587 (2d ed.

1983)); *see also E.R. Squibb & Sons, Inc.* v. *Lloyd's & Cos.*, 241 F.3d 154, 177 (2d Cir. 2001).

In conducting this analysis, "courts have often compared the amount claimed against the insured

to the attachment point of the relevant excess insurance as a method for determining whether

there is a 'reasonable likelihood that the claims will mature as to that [excess insurer].'" *Tocci*

*Bldg. Corp. of N.J., Inc.*, 750 F. Supp. 2d at 322 (alteration in original) (quoting *Raytheon Co.* v.

*Cont'l Cas. Co.*, 123 F. Supp. 2d 22, 30 (D. Mass. 2000)).

In this case, Illinois National, as first-level excess carrier, has taken the position that the underlying claims constitute a single claim triggering only the 2009–10 policy year, limiting its exposure to $23 million. The second-level excess ACE Policy provides $10 million in coverage for sums exceeding $25 million. Cushman has not alleged in its complaint that the 2009–10 Illinois National policy would be exhausted if the underlying claims triggered only the 2009–10 policy year. And, unlike plaintiffs in similar cases, Cushman has not indicated the cost of defense or what Illinois National has paid in damages or settlement in the underlying claims, so as to facilitate a straightforward comparison of Cushman's exposure to the attachment point of the ACE Policy. *See Md. Cas. Co.* v. *W.R. Grace & Co.*, No. 88 C 2613, 1996 WL 306372, at *3 (S.D.N.Y. June 7, 1996) ("[T]he court can compare the current evidence on exhaustion of underlying insurance to the various attachment points of the moving defendant-insurers' policies to determine if there is a reasonable likelihood . . . that [the insured] will reach those attachment points.").

Nevertheless, the court is satisfied that a case and controversy exists between ACE and Cushman. In its counterclaim in this case, Illinois National alleges that it has paid more than $27 million in indemnity and defense costs in connection with the underlying claims. (Dkt. 84 at 28–29 ¶ 3.) Accepting Illinois National's contentions as true, if the court ultimately determines that the underlying claims fall under only the 2009–10 year, not only is there a practical likelihood that the ACE Policy will be triggered, but the ACE Policy threshold has already been reached. Although the court has yet to decide whether the underlying claims fall under multiple policy years, the court's resolution of this issue in Illinois National's favor could place ACE on the hook for amounts exceeding the limits of the 2009–10 Illinois National policy. Thus, this case presents a controversy substantial enough to warrant jurisdiction under the Declaratory Judgment

Act.  *See E.R. Squibb & Sons, Inc.*, 241 F.3d at 176–78 (affirming district court's finding that a case or controversy existed when the district court's resolution of certain issues "could end up placing in a single policy year a substantial number of claims that might very well reach the levels of each of the carriers in this litigation").[6]

ACE maintains that a case or controversy does not exist because ACE and Cushman agree that the underlying claims trigger multiple policy years.  The relevant inquiry, however, is not whether the parties agree on the construction of the Illinois National Policies but whether ACE would accept its policy obligations to defend and indemnify Cushman if the court determines that the underlying claims trigger only the 2009–10 policy year.  On this score, ACE's January 30, 2014 letter to Cushman, which agrees with Cushman's position that the underlying claims trigger multiple policy years, nevertheless states that ACE "must continue to reserve all of ACE's rights under our policies."[7]  (Dkt. 64-5 at 3.)  Moreover, ACE argues in its reply brief that it may rely on policy exclusions for prior knowledge and fraud if its coverage is

---

[6] According to ACE, a case or controversy is lacking because under the terms of the ACE Policy and New York law, which ACE maintains applies to this case, lower-tiered insurance policies must be exhausted before an excess insurance company can be liable.  (*See, e.g.*, dkt. 64 at 6 (citing *Forest Labs, Inc.* v. *Arch Ins. Co.*, 116 A.D.3d 628, 984 N.Y.S.2d 361 (1st Dep't 2014).)  As an initial matter, justiciability is a question of federal, not state, law.  *See Medline Indus., Inc.* v. *Ram Med., Inc.*, 892 F. Supp. 2d 957, 964 (N.D. Ill. 2012) ("While it is true that federal courts sitting in diversity apply the substantive law of the state in which they sit, whether a dispute has reached a stage where it is ripe for adjudication is a question of federal practice." (citations omitted)).  Moreover, the settled legal principle on which ACE relies is "not particularly instructive on the issue of ripeness under federal law."  *See RSUI Indem. Co.* v. *Enbridge (U.S.) Inc.*, No. H-08-1907, 2008 WL 5158179, at *2 (S.D. Tex. Dec. 9, 2008) (rejecting justiciability challenge to excess insurer's declaratory judgment action against insured and finding that a live controversy existed even though lower-tiered insurance policies had not been exhausted).  Indeed, the inquiry is not whether ACE's obligation to pay Cushman has matured, but whether a substantial enough controversy exists to warrant the issuance of a declaratory judgment.

[7] Courts may consider documents outside the pleadings on a motion to dismiss that are referenced in the complaint, central to the plaintiff's claims, and concededly authentic.  *Hecker* v. *Deere & Co.*, 556 F.3d 575, 582 (7th Cir. 2009).  Cushman refers to ACE's letter in its complaint (Compl. ¶ 62), and the letter is central to Cushman's claim that ACE waited until January 30, 2014 to provide its written position on whether the underlying claims trigger multiple policy years.  The parties do not dispute the authenticity of the letter.

triggered in the future. (Dkt. 96 at 5–6.) These representations demonstrate that there is a reasonable likelihood that dispute will arise regarding the coverage and terms of the ACE Policy, thus indicating the existence of a live controversy.

Exercising jurisdiction over ACE also serves the interest of judicial economy. Given the complexity of this case, ACE's involvement will facilitate a global resolution of the underlying controversy. Indeed, "it is fundamentally practical for the parties and beneficial for purposes of judicial efficiency to have all of the implicated insurers present and participating." *Tocci Bldg. Corp. of N.J., Inc.*, 750 F. Supp. 2d at 324. "Proceeding without an insurer . . . would hinder or delay comprehensive settlement negotiations and impede resolution of the case." *Id.* (citation omitted). Under the circumstances, the court finds that Cushman's declaratory judgment claim against ACE is fit for review.

Finally, ACE argues that count III is not ripe for review with respect to ACE's obligation to indemnify Cushman for the *Gibson* case because the case has not yet been resolved.[8] As a general rule, "decisions about indemnity should be postponed until the underlying liability has been established." *Lear Corp.* v. *Johnson Elec. Holdings Ltd.*, 353 F.3d 580, 583 (7th Cir. 2003); *see also Nationwide Ins. Co.* v. *Zavalis*, 52 F.3d 689, 693 (7th Cir. 1995). This is "because a declaration regarding the duty to indemnify may have no real-world impact if there is no liability in the underlying litigation" and therefore, the "declaration could . . . amount to an impermissible advisory opinion." *Molex Inc.* v. *Wyler*, 334 F. Supp. 2d 1083, 1087 (N.D. Ill. 2004) (citing *Lear*, 353 F.3d at 583). Only where the harm is "sufficiently probable" should the

---

[8] ACE suggests in its reply brief that ACE's indemnity obligation with respect to *all* of the underlying claims is not ripe for review because the *Gibson* case is still ongoing. (*See* dkt. 96 at 4.) As noted above, however, the parties do not dispute that the *Gibson* case is the only underlying claim that is still pending. Thus, ACE's obligation to indemnify Cushman is ripe for review with respect to the underlying claims that have been resolved.

court proceed.  *Id.*; *see also Bankers Trust Co.* v. *Old Republic Ins. Co.*, 959 F.2d 677, 681 (7th Cir. 1992).

Here, Cushman has not pleaded facts indicating that injury is probable.  In fact, the complaint provides that Cushman "has thus far successfully defended against the *Gibson* matter" and has obtained orders from the court denying class certification and denying leave to file a fourth amended complaint.  (Compl. ¶ 34.)  These facts suggest that there may be no liability in the underlying action and raise the possibility that a declaration as to ACE's duty to indemnify Cushman with respect to the *Gibson* case could constitute an advisory opinion.  Thus, ACE's motion to dismiss count III will be granted without prejudice with respect to ACE's duty to indemnify Cushman in connection with the *Gibson* case.  For the reasons discussed above, however, ACE's motion to dismiss count III is denied with respect to ACE's obligations to defend Cushman against all claims and to indemnify Cushman for the claims that have been resolved.

## II.    12(b)(6) Motion to Dismiss Counts IX and XII

ACE next argues that Cushman's claims for breach of contract and breach of the implied covenant of good faith and fair dealing should be dismissed for failure to state a claim on which relief may be granted.  Fed. R. Civ. P. 12(b)(6).  In ruling on a Rule 12(b)(6) motion, the court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor.  *Active Disposal, Inc.* v. *City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).  To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also establish that the requested relief is plausible on its face.  *See Ashcroft* v. *Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed.

2d 929 (2007).  The allegations in the complaint must be "enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  At the same time, the plaintiff need not plead legal theories; it is the facts that count.  *Hatmaker* v. *Mem'l Med. Ctr.*, 619 F.3d 741, 743 (7th Cir. 2010); *see also Johnson* v. *City of Shelby*, --- U.S. ---, 135 S. Ct. 346, 346, --- L. Ed. 2d --- (2014) (per curiam) ("Federal pleading rules call for 'a short and plain statement of the claim showing the pleader is entitled to relief' . . . .  [T]hey do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted.").

A.      **Choice of Law**

As an initial matter, ACE argues that New York law applies to Cushman's claims for breach of contract and breach of the implied covenant of good faith and fair dealing.  Cushman contends that the court should not make a choice-of-law determination because ACE has not shown that there is an outcome-determinative conflict between Illinois and New York law.  ACE relies primarily on New York law in its opening and reply briefs, while Cushman cites a combination of New York and Illinois law.

Federal courts sitting in diversity apply the choice of law rules of the forum state.  *Hinc* v. *Lime-O-Sol Co.*, 382 F.3d 716, 719 (7th Cir. 2004) (citations omitted).  Under Illinois law, a choice of law analysis is "required only when a difference in law will make a difference in the outcome."  *Townsend* v. *Sears, Roebuck & Co.*, 879 N.E.2d 893, 899, 227 Ill.2d 147, 316 Ill. Dec. 505 (2007).  "The party seeking the choice-of-law determination bears the burden of demonstrating a conflict."  *Bridgeview Health Care Ctr., Ltd.* v. *State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905, 2014 IL 116389, 381 Ill. Dec. 493 (2014) (citation omitted).  A "potential conflict" is not enough; "a choice-of-law determination is required only when the moving party has established an actual conflict between state laws."  *Id.* at 909.

Here, the only conflict identified by ACE is that an Illinois statute permits the recovery of attorney's fees from an insurance company for a bad faith failure to pay or settle a claim under an insurance policy, while New York law does not allow an insured to recover the attorney's fees incurred in bringing an action against its insurer.[9] (Dkt. 64 at 12 n.2 (citing 215 Ill. Comp. Stat. 5/155; *N.Y. Univ.* v. *Cont'l Ins. Co.*, 662 N.E.2d 763, 772, 87 N.Y.2d 308, 639 N.Y.S.2d 283 (1995)).) This potential conflict is not relevant to the resolution of this motion. Thus, because ACE has not demonstrated the existence of a material conflict, the court will apply Illinois law.

## B.    Count IX

Count IX alleges that ACE breached its obligations under the ACE Policy by "(a) failing to timely respond to Illinois National's assertion that the Underlying Claims are related claims covered solely under the 2009–2010 policy period, and (b), despite promising to do so, failing to timely provide in writing its determination that the Underlying Claims are separate claims triggering separate policy years." (Compl. ¶ 131.) To state a claim for breach of contract under Illinois law, a plaintiff "must allege four elements: '(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) resultant damages.'" *Reger Dev., LLC* v. *Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) (quoting *W.W. Vincent & Co.* v. *First Colony Life Ins. Co.*, 814 N.E.2d 960, 967, 351 Ill. App. 752, 286 Ill. Dec. 734 (2004)).

Cushman's complaint does not specify which provisions of the ACE Policy were breached. In fact, ACE contends, and Cushman does not dispute, that ACE's conduct did not

---

[9] It is unclear whether this conflict still exists. *See Chernish* v. *Mass. Mut. Life Ins. Co.*, No. 5:08-cv-0957, 2009 WL 385418, at *5 (N.D.N.Y. Feb. 10, 2009) (denying motion to strike request for attorney's fees in suit brought by insured against its insurer to settle its rights under the insurance policy because "*Bi-Economy Market* has changed the landscape . . . [and] [t]he pleading stage is too early in the litigation to resolve Plaintiff's entitlement to attorney's fees"); *see also generally Bi-Econ. Market, Inc.* v. *Harleysville Ins. Co. of N.Y.*, 886 N.E.2d 127, 10 N.Y.3d 187, 856 N.Y.S.2d 505 (2008).

violate a specific provision, and the court's own examination of the ACE Policy did not reveal such a provision (*see* dkt. 64-1). Absent a breach of a provision of the ACE Policy, Cushman cannot state a plausible claim for breach of contract. *See Ronald McDonald House Charities of Chicagoland* v. *Winning Charities Ill., LLC*, No. 13 C 1430, 2013 WL 5907668, at *5 (N.D. Ill. Nov. 4, 2013) (dismissing breach of contract claims under Illinois law when the plaintiff "failed to point to any express provisions in the contract precluding [defendant] from making such demands or cancelling the line of credit"). Accordingly, count IX will be dismissed.

In its response brief, Cushman argues that it need not identify a specific provision of the ACE Policy because count IX states a claim for breach of the implied covenant of good faith and fair dealing. (Dkt. 87 at 10.) Under Illinois law, a duty of good faith and fair dealing is present in every contract. *Brooklyn Bagel Boys, Inc.* v. *Earthgrains Refrigerated Dough Prods., Inc.*, 212 F.3d 373, 381 (7th Cir. 2000); *JPMorgan Chase Bank, N.A.* v. *East-West Logistics, L.L.C.*, 9 N.E.3d 104, 118, 2014 IL App (1st) 121111, 380 Ill. Dec. 854 (2014). "Its purpose is to ensure that parties do not take advantage of each other in a way that could not have been contemplated at the time the contract was drafted or do anything that will destroy the other party's right to receive the benefit of the contract." *Gore* v. *Ind. Ins. Co.*, 876 N.E.2d 156, 161, 376 Ill. App. 3d 282, 315 Ill. Dec. 156 (2007) (citation omitted). The obligation, however, "is used as an aid in construing a contract under Illinois law," and "does not create an independent cause of action." *McArdle* v. *Peoria Sch. Dist. No. 150*, 705 F.3d 751, 755 (7th Cir. 2013). In other words, "[t]his doctrine is a rule of construction, not a stand-alone obligation." *In re Kmart Corp.*, 434 F.3d 536, 542 (7th Cir. 2006) (citations omitted).

Typically, the implied obligation is used when one party to a contract has been given "broad discretion in performing its obligations." *Gore*, 876 N.E.2d at 161 (citation omitted).

Under those circumstances, the implied covenant "is read into the agreement, imposing a reasonable limitation on the exercise of that discretion." *Envision Healthcare, Inc.* v. *Fed. Deposit Ins. Corp.*, No. 11 C 6933, 2014 WL 6819991, at *9 (N.D. Ill. Dec. 3, 2014) (citing *Dayan* v. *McDonald's Corp.*, 466 N.E.2d 958, 971, 125 Ill. App. 3d 972, 81 Ill. Dec. 156 (1984)). Cushman does not argue that ACE violated a specific obligation imposed by the ACE Policy, and thus it is unclear why the implied duty as a tool of construction is relevant to the court's analysis. Cushman's argument seems to be that ACE's conduct, although not prohibited by the ACE Policy, violated ACE's independent obligation to act in good faith in its relations with Cushman generally. But under Illinois law, the implied duty of good faith and fair dealing does not "permit a party to enforce an obligation not present in the contract." *McArdle*, 705 F.3d at 755. As such, count IX must be dismissed.

### C.     Count XII

Count XII separately claims against ACE breach of the implied covenant of good faith and fair dealing. According to Cushman, ACE breached its implied obligation by failing "to timely respond to C&W's requests with respect to the Underlying Claims," failing "to timely set forth in writing its determination that the Underlying Claims" trigger multiple policy years, "refusing to negotiate with Illinois National directly," and "[i]gnoring documents and/or information sent to it in connection with the payments it promised to make under the Standstill Agreement . . . and not timely paying its portion of C&W's defense." (Compl. ¶ 149(d).) As noted above, however, a claim for breach of the implied duty of good faith and fair dealing cannot stand on its own under Illinois law, and thus, count XII fails to state a claim.[10]

---

[10] Although New York law recognizes an independent claim for breach of the implied covenant provided that it is not duplicative of an already pleaded breach of contract claim, count XII would still fail under New York law. First, the portion of Cushman's claim alleging that ACE failed to make timely payments in accordance with the Standstill Agreement is duplicative of count X, which brings a claim for

Cushman argues that count XII should not be dismissed because it states a claim for insurer bad faith. But Illinois courts have permitted an independent claim for breach of the duty of good faith and fair dealing to proceed only "'in the narrow context of cases involving an insurer's obligation to settle with a third party who has sued the policy holder.'" *APS Sports Collectibles, Inc.* v. *Sports Time, Inc.*, 299 F.3d 624, 628 (7th Cir. 2002) (quoting *Voyles* v. *Sandia Mortg. Corp.*, 751 N.E.2d 1126, 1131, 196 Ill.2d 288, 256 Ill. Dec. 289 (2001)). Cushman does not allege that ACE failed to negotiate a settlement with a third party in good faith. Accordingly, count XII does not fall within this narrow exception. Count XII must be dismissed.

### III. Motion to Strike Cushman's Request for Consequential Damages, Attorney's Fees, and Punitive Damages

Finally, ACE moves to strike Cushman's request for consequential damages, attorney's fees, and punitive damages. Because counts IX and XII have been dismissed, the motion is denied as moot as to those counts. And because Cushman only seeks punitive damages in connection with count XII (Compl. ¶ 153), ACE's motion to strike Cushman's request for punitive damages is denied as moot as well.

---

breach of that agreement. *See Spandex House, Inc.* v. *Travelers Prop. Cas. Co. of Am., Inc.*, No. 14 C 4251, 2015 WL 509678, at *2 (S.D.N.Y. Feb. 6, 2015) ("[A] claim for breach of the implied covenant will be dismissed as redundant where the conduct allegedly violating the implied covenant is also the predicate for breach . . . of an express provision of the underlying contract." (citation omitted) (internal quotation marks omitted)). Second, the implied covenant is breached "when a party to a contract acts in a manner that, although not expressly forbidden by any contractual provision, would deprive the other party of the right to receive the benefits under their agreement." *PCVST Mezzco 4, LLC* v. *Wachovia Bank Commercial Mortg. Trust 2007-C30*, No. 14 C 6023, 2015 WL 153048, at *5 (S.D.N.Y. Jan. 12, 2015) (citation omitted) (internal quotation marks omitted). Cushman does not allege that ACE's conduct deprived Cushman of its rights under the ACE Policy, nor could it. Had ACE convinced Illinois National to alter its interpretation of the policy, the underlying claims would implicate multiple policy years and the ACE Policy would not be triggered. Rather, Cushman maintains that, had ACE provided Cushman "with its written rejection of the 'single-year' allocation in a timely manner," it would have "increased the likelihood that Illinois National would abandon that improper allocation of the Underlying Claims." (Compl. ¶ 60.)

Count X, the only remaining claim against ACE besides count III, brings a claim against ACE for breach of the Standstill Agreement. In that count, Cushman alleges that it "has suffered and will suffer damages in an amount to be determined at trial, but in any event no less than the jurisdictional limits of this Court, plus consequential damages, including attorneys' fees, as well as pre- and post-judgment interest to the extent permitted by law." (*Id.* ¶ 138.) In its prayer for relief with respect to count X, however, Cushman requests "damages in an amount to be determined at trial . . . plus pre- and post-judgment interest," but omits its request for consequential damages and attorney's fees. (*Id.* at Prayer for Relief(j).) As such, it is unclear whether Cushman seeks consequential damages and attorney's fees in connection with count X. Nevertheless, the court will consider ACE's motion for the sake of completeness.

Illinois and New York apply different standards when considering the availability of consequential damages. In Illinois, consequential damages are recoverable for breach of contract when they were reasonably foreseeable to the parties at the time of contracting. *Linc Equip. Servs., Inc.* v. *Signal Med. Servs., Inc.*, 319 F.3d 288, 289 (7th Cir. 2003); *Merix Pharm. Corp.* v. *Clinical Supplies Mgmt., Inc.*, --- F. Supp. 2d ---, 2014 WL 3587294, at **11–12 (N.D. Ill. July 17, 2014). The damages, however, need not be expressly contemplated. *Linc Equip. Servs., Inc.*, 319 F.3d at 289. In contrast, consequential damages are generally not recoverable under New York law unless the "damages were foreseeable *and* within the contemplation of the parties at the time the contract was made." *Rhodes* v. *Davis*, No. 08 C 9681, 2012 WL 4471515, at *3 (S.D.N.Y. Sept. 27, 2012) (emphasis added) (citation omitted). Although Illinois and New York law are different, the court need not make a choice-of-law determination because under either standard, ACE's motion is premature. The court cannot make determinations of foreseeability

and contemplation at the pleading stage of the litigation.  Thus, to the extent Cushman seeks consequential damages in connection with count X, ACE's motion to strike will be denied.

Illinois and New York both follow the American Rule with respect to attorney's fees—that is, "[g]enerally, a prevailing party may not recover attorney's fees and costs in the absence of a statute or contractual agreement between the parties authorizing such recovery."  *FDIC* v. *Masarsky*, 968 F. Supp. 2d 915, 930 (N.D. Ill. 2013) (citation omitted); *see also Versatile Housewares & Gardening Sys., Inc.* v. *Thill Logisitics, Inc.*, 819 F. Supp. 2d 230, 242 (S.D.N.Y. 2011) (New York law).  Cushman has not pointed to a statute or provision in the Standstill Agreement permitting recovery of attorney's fees under these circumstances.[11]  Thus, ACE's motion to strike will be granted to the extent Cushman seeks attorney's fees in connection with count X.

## CONCLUSION AND ORDER

For the foregoing reasons, ACE's motion to dismiss and strike (dkt. 63) is granted in part and denied in part.  The portion of count III directed at ACE's indemnity obligation in connection with the *Gibson* case is dismissed without prejudice, but the motion to dismiss is otherwise denied as to count III.  Counts IX and XII are dismissed with prejudice.  ACE's motion to strike is denied to the extent Cushman seeks consequential damages in connection with count X, and granted to the extent Cushman seeks attorney's fees with respect to count X.  The motion to strike is denied as moot with respect to counts IX and XII.

---

[11] While Illinois allows for the recovery of attorney's fees "[i]n any action by or against a company wherein there is in issue the liability of a company on a policy or policies of insurance . . . and it appears to the court that such action or delay is vexatious and unreasonable," 215 Ill. Comp. Stat. 5/155(1), count X brings a claim for breach of the Standstill Agreement, not of the ACE Policy.  Thus, this statute does not apply to count X.

Date:  May 11, 2015        _____

U.S. District Judge Joan H. Lefkow